IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WACO TOWN SQUARE PARTNERS, L.P. | § | CASE NO. 11- 38928-H1-11 |
| | § | |
| | § | |
| WACO TOWN SQUARE PARTNERS II, L.P | § | CASE NO. 11- 38929-H4-11 |
| | § | |
| | § | |
| | § | Joint Administration Requested |
| DEBTORS | § | |
| | § | (Chapter 11) |

**EMERGENCY MOTION (I) FOR INTERIM AUTHORITY TO USE CASH COLLATERAL (II) TO INCUR POST PETITION INDEBTEDNESS UNDER 11 U.S.C. §363, §364, §502(b) AND §105 AND (III) REQUEST FOR PRELIMINARY AND FINAL HEARINGS**

**\*\*AN EMERGENCY HEARING ON THIS MATTER WILL BE CONDUCTED ON THURSDAY, OCTOBER 27, 2011 AT 10:30 A.M. IN COURTROOM 404, 4TH FL, 515 RUSK, HOUSTON TX, 77002.\*\***

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Waco Town Square Partners, LP ("WTSP" or "Debtor WTSP") and Waco Town Square Partners II, LP ("WTSP II" or "Debtor WTSP II") (collectively "Debtors"), file this *Emergency*

*Motion (I) for Order Granting Interim Authority to Use Cash Collateral (II) to Incur Post Petition Indebtedness Under 11 U.S.C. §363, §364, §503(b)and §105 and (III) for Preliminary and Final Hearings* (the "Motion") and in support thereof, respectfully states as follows:

## Summary and Emergency Basis

1. These Chapter 11 cases were each filed on October 21, 2011. By this Motion, Debtors seek authority to use Cash Collateral in order to fund operations while they formulate a Chapter 11 plan. This is a single asset real estate case. Debtor WTSP owns developed mixed use real property located in downtown Waco, Texas containing forty-nine (49) apartment/condominium units and approximately 12,000 sq. feet of retail space.

2. Upon approval of this Motion, Community Bank & Trust, which allegedly holds liens on the Debtors' assets, will be given replacement liens on the Debtors' post-petition receivables for use of its cash collateral.

3. However, the rental income received in connection with the Property is currently insufficient to fund ongoing operations. Accordingly, the Debtors will require an infusion of funds to pay ongoing expenses in the near term. An affiliated entity of the Debtors will provide an unsecured DIP Financing Agreement up to $100,000 to cover the projected shortfall. The DIP Financing Agreement shall be allowed as an administrative expense pursuant to 11 U.S.C. §503(b)(1).

4. Debtors have moved this Court on an emergency basis for (i) authorization to use cash collateral; (ii) approval of the DIP Financing Agreement; (iii) a preliminary hearing regarding these matters in order to satisfy the ordinary and necessary expenses of operation. An emergency preliminary hearing is necessary since some of these expenses need to be paid before expiration of the fourteen (14) day notice period provided for in Bankruptcy Rule 4001 and for

use of cash collateral. Debtors also request the Court set a final hearing so that final cash collateral and DIP financing orders can be approved.

## I. Jurisdiction and Venue

5. This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157, 1334.

6. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

7. Venue of the Debtors' Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1409.

## II. Background Information

### A. Overview of the Debtor

8. Debtor Waco Town Square Partners, LP ("Debtor WTSP") is a Texas limited partnership formed in 2007 and currently has its principal office located in Sugar Land, Texas. Waco Town Square Management, LLC ("WTSM Partner") is the general partner of Debtor WTSP. The only asset of this debtor is a mixed use real property project located in the Waco Town Square redevelopment project in downtown Waco, Texas ("Property").

9. Debtor Waco Town Square Partners II, LP ("Debtor WTSP II") is also a Texas limited partnership formed in 2008 and currently has its principal office located in Sugar Land, Texas. Waco Town Square Management II, LLC ("WTSM II Partner") is the general partner of Debtor WTSP II. The only asset of this debtor is an unsecured note from Debtor WTSP in the approximate amount of $191,000. This debtor currently has no operations. David Wallace is the Manager and Vice-President of each debtor and is also the 100% owner of WTSM Partner and WTSM II Partner. Debtor WTSP and Debtor WTSP II are collectively referred to hereafter as "Debtors".

10. Debtor WTSP and Debtor WTSP II were both initially managed and developed by a third party developer (the "Original Developer") located in Waco, Texas. For various economic reasons, the Original Developer has previously filed for personal bankruptcy protection. As a result of a myriad of financial and operational issues, the Original Developer was replaced as the Manager of each debtor, and David Wallace was brought in as the substitute manager in 2009, bringing with him over $2 million of additional capital for Debtor WTSP to pay off the original general contractor and over 40 subcontractors and other creditors. Although David Wallace has continued to affect a restructuring and work-out of the Debtors, many of the creditor claims, litigation, cross-guarantees and operational struggles stemming back to the 2007 and 2008 time frame, continue to exist.

11. Forty-nine (49) loft-style apartment/condominium residences are built on the Property, along with approximately 12,000 square feet of retail space. The residential dwellings are one and two bedroom units which are available in ten various floor plans, each containing high end amenities such as wood floors, stainless appliances, granite countertops, and balconies. To date, only four of the residences have been sold. With the collapse of the real estate market and continuing financial matters such as cost over-runs, M&M Liens, Tax Liens, litigation, etc., all stemming back to the 2007 and 2008 time period, Debtor WTSP was unable to sell the remaining units and instead is currently leasing all but two of the remaining units. These two units remain vacant and due to improper sound insulating materials at construction, it appears that these units will not be habitable without significant economic discounts. Additionally, a restaurant and a gourmet sandwich shop are each tenants occupying the retail space. Approximately 3000 sq feet of the commercial retail space is currently unoccupied. Debtor

WTSP receives total gross monthly rental income of approximately $57,500 in connection with the various residential and commercial tenant leases.

12. Debtor WTSP is indebted to Community Bank & Trust of Waco ("CB&T") pursuant to various Promissory Notes which are secured by a first priority deed of trust lien on the Property (collectively "Notes"). Although Debtor WTSP and Debtor WTSP II have substantially different owners, Debtor WTSP II has been a guarantor of the Notes since 2008. The Notes matured in December 2010 and as of the Petition Date, the principal balance on the Notes is approximately $7,962,000. Prior to the Petition, the Debtors entered into several extensions with CB&T whereby the maturity date of the Notes has now been extended through April 15, 2012.

13. These bankruptcy cases were filed for two primary reasons. First, the inability to sell the units and significant cost over-runs in 2007 and 2008 created significant liquidity issues for the Debtors and ultimately resulted in the commencement of various prepetition lawsuits, including suits related to alleged transgressions by the Original Developer. The bankruptcy filing will stay this prepetition litigation. Second, the Debtors will be unable to retire the debt owed to CB&T prior to the expiration of the extended maturity date. The Debtors intend to utilize the bankruptcy filing to restructure their debt and equity and reorganize the business.

### B. Financing

14. Debtor WTSP is indebted to Community Bank & Trust of Waco ("CB&T") pursuant to various Promissory Notes which are secured by a first priority deed of trust lien on the Property (collectively "Notes"). The Notes matured in December 2010 and as of the Petition Date, the principal balance on the Notes is approximately $7,962,000. Prior to the Petition, the

Debtors entered into several extensions with CB&T whereby the maturity date of the Notes has now been extended through April 15, 2012.

15. The Notes are secured by a first priority deed of trust lien on the Property and a first lien on substantially all of Debtor WTSP's assets. WTSP II is a guarantor of the Notes.

### C. Events Leading to Bankruptcy

16. These bankruptcy cases were filed for two primary reasons. First, the inability to sell the units created significant liquidity issues for the Debtors and ultimately resulted in the commencement of various prepetition lawsuits, including suits related to alleged transgressions by former limited partners and mangers. The Debtors have been unable to resolve the litigation and are now at a point where the distraction of lawsuits is greatly interfering with the Debtors operations. The bankruptcy filing will stay this prepetition litigation.

17. Second, the Debtors are unable to retire the debt owed to CB&T prior to the expiration of the extended maturity date. The Debtors intend to utilize the bankruptcy filing to restructure their debt and equity and reorganize the business.

18. However, the Debtors' current cash situation is desperate. Without an immediate infusion of cash, Debtor WTSP will be unable to meet current operating expenses.

### III. Basis For Requested Relief

#### A. Cash Collateral and Authority to Use

19. As stated above, prior to the Petition Date, Debtor WTSP entered into the Term Notes with CB&T, whereby the Debtor granted CB&T a lien and security interest in substantially all of its assets, including accounts receivable (collectively "Collateral").

20. The current principal balance on the Notes is approximately $7.9 million. The Debtors have reached final agreement with CB&T with respect to interim use of cash collateral

in accordance with the budget attached hereto as Exhibit "A" and subject to the following significant terms:

    (a) The Debtors may use cash collateral pursuant to an approved budget attached, with a 10% variance per line item and the ability to apply any un-used budgeted funds at its discretion.

    (b) CB&T's pre-petition lien will be adequately protected by replacement liens to the same extent and priority as its pre-petition lien.

    (c) Approval of the DIP Financing Agreement described below.

21. The only viable source of funding for post-petition operations is cash collateral made available to the Debtors and DIP financing described herein.

22. The importance in cases like these of access to cash was recognized in *In re George Ruggieri Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). The court in that case noted: "A debtor, attempting to reorganize in business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *Id*. at 1019. 31. The Debtors are hopeful that the secured creditor will consent to the proposed use of cash collateral, subject to receiving replacement liens and perhaps other protections as provided in an agreed order. To the extent it does not consent, however, the Court may authorize the use of cash collateral by the Debtors provided that the Court determines that any objecting entity's interest is adequately protected. 11 U.S.C. § 363(c)(2)(B) and (e).

23. Section 361 sets forth three non-exclusive examples of what may constitute adequate protection. They include "providing the secured creditor with "additional or replacement liens" and other relief that provides the secured creditor with the "indubitable equivalent" of the secured creditor's interest in the cash collateral. Legislative history indicates that Congress intended to provide courts with flexibility to grant relief on a case-by-case basis.

24.     Pursuant to the Motion, the Debtors propose to grant the secured creditor replacement liens on post-petition accounts receivable, a recognized method for providing adequate protection as specified under sections 361 and 363.

25.     Without access to cash collateral, operations will cease. The going concern of the Debtors' assets will plummet, receivable collections will dry up and the Property manager will quit.  From that standpoint, the overall collateral position of secured creditors will deteriorate markedly, more than offsetting any erosion of the cash collateral.

26.     Bankruptcy Rule 4001(b)(2) states that 14 days' notice must be given before final approval of such cash collateral use is given.  With this Motion, the Debtors are also seeking an emergency hearing upon expiration of the 14 day notice period.

### B.  DIP Financing and Legal Standard

27.     Debtors' affiliate, Austin Avenue Contribution Company ("AACC") is willing to provide DIP financing to the Debtors, during the pendency of this case.  Subject to court approval, AACC has agreed to provide unsecured DIP financing ("DIP Financing Agreement") to the Debtor Waco Town Square Partners, LP in the amount up to $100,000 ("DIP Promissory Note"). The DIP Financing Agreement shall be allowed as an administrative expense pursuant to 11 U.S.C. §503(b).

28.     The DIP Financing Agreement will be used to help fund Debtors' operations for the next six months, making monthly interest payments on the Notes.   Debtor anticipates confirming a plan of reorganization prior to the maturity of the DIP Promissory Note.

29.     If the DIP Financing Agreement is not approved, Debtors be unable to continue operations and manage the Property.

30. The material terms of the DIP Promissory Note are as follows:

*Amount:* $100,000 USD

*Interest:* Prime plus 2%

*Maturity Date:* Note comes due on the earlier (a) April 30, 2011; (b) the date of acceleration of the Obligations of Borrower, (c) the effective date of a plan of reorganization or arrangement in the Chapter 11 Case.

*Collateral:* None
*Treatment:* Administrative expense under 11 U.S.C. § 503(b) and 507(a)

A copy of the DIP Promissory Note is attached as Exhibit B.[1]

31. The Debtors request that this credit facility be allowed under 11 U.S.C. § 503(b)(l) as an administrative expense.

32. The Debtors believes that they have a business justification for entering into the DIP Promissory Note in order to ensure that future operations are funded.

33. Thus, the Debtors ask for this Court to authorize the Debtors to enter into the DIP Promissory Note with AACC in an amount up to $100,000 which will be entitled to administrative expense priority under 11 U.S.C. § 503(b)(1).

34. The Debtors have requested emergency consideration and interim approval of this Motion as permitted by Rule 4001(c)(3) of the Federal Rules of Bankruptcy Procedure.

35. The Debtors are unable to obtain alternative financing on reasonable terms with such short notice.

36. Bankruptcy Rule 4001(C)(2) states that 14 days' notice must be given before final approval of such financing is given. However, the Court may conduct a hearing prior to the expiration of the 14 day period if it is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

---

[1] To the extent there are differences between the term sheet and the order, the order shall control.

37. The Debtors require court approval to enter into the DIP Financing Agreement and that the Court conduct an immediate hearing on this Motion. The Debtors will suffer irreparable harm if the Motion is not immediately considered as it does not have the funds to continue operations. There is little harm to general unsecured creditors under this agreement since the PrePetition Lender already has a first lien on substantially all of the Debtors' assets. Thus, if the Debtors cannot fund operations, they will have to cease operating and CB&T will foreclose on the Property, leaving nothing for unsecured creditors.

### IV. Conclusion

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court:

1)   Set an emergency preliminary hearing on this Motion;

2)   Enter a preliminary order authorizing the use of cash collateral pursuant to the attached budget for 14 days;

3)   Enter a preliminary order authorizing the Debtors to incur post-petition indebtedness as an administrative claim on an interim basis;

4)   Set a final hearing on this Motion after expiration of fourteen (14) days notice period required by Bankruptcy Rule 4001; and

5)   Granting all such other and further relief as is just and proper.

DATED:  October 24, 2011

          Respectfully submitted,

          HOOVER SLOVACEK LLP

          */s/ Melissa A. Haselden*
By:                  
          EDWARD L. ROTHBERG
          State Bar No. 17313990
          MELISSA A. HASELDEN
          State Bar No. 00794778
          5847 San Felipe, Suite 2200
          Houston, Texas 77057
          Telephone: 713.977.8686
          Facsimile:  713.977.5395

          PROPOSED ATTORNEYS FOR DEBTORS

**CERTIFICATE OF SERVICE**

 I hereby certify that a true and correct copy of the above and foregoing Motion has been served via the ECF system, facsimile or first class mail postage prepaid on October 24, 2011, to the parties shown on the Service List attached.

          */s/ Melissa A. Haselden*
          MELISSA A. HASELDEN

# Austin Avenue Flats
## 14-Day Operating Budget Analysis

|  | WEEK 1 | WEEK 2 | TOTAL 14-DAYS |
|---|---:|---:|---:|
| **Expenses** | | | |
| Advertising | $ - | $ - | $ - |
| Account Charges | | $ 55 | $ 55 |
| Admin / General | $ 221 | $ 221 | $ 442 |
| Maintenance / Make Ready | $ 529 | $ 529 | $ 1,059 |
| Management Fees | $ 222 | $ 1,222 | $ 1,445 |
| BK Legal / Professional Fees | $ - | $ - | $ - |
| Utilities | $ 124 | $ 124 | $ 248 |
| Capital Improvement | $ - | $ - | $ - |
| HOA Transfer | $ - | $ 11,000 | $ 11,000 |
| Contingency | $ 250 | $ 250 | $ 500 |
| **TOTAL EXPENSES** | $ 1,346 | $ 13,401 | $ 14,747 |

EXHIBIT "A"

## PROMISSORY NOTE

$100,000                                                                                                          October__ , 2011

**FOR VALUE RECEIVED,** on or before the earlier (a) April 30, 2012; (b) the date of acceleration of the Obligations of Borrower, (c) the effective date of a plan of reorganization or arrangement in the Chapter 11 Case (the "Maturity Date"), the undersigned (hereinafter referred to as "Borrower"), promises to pay to the order of AUSTIN AVENUE CONTRIBUTION COMPANY (the "DIP Lender") the principal amount of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000) ("Total Principal Amount"), or such amount less than the Total Principal Amount which is outstanding from time to time if the total amount outstanding under this Promissory Note ("Note") is less than the Total Principal Amount, together with interest at the rate set forth below on such portion of the Total Principal Amount which has been advanced to Borrower from the date advanced until paid.

**Interest Rate.** The unpaid principal amount of this Note shall bear interest at the rate of prime plus 2% per annum compounded semi-annually based on a year of 365; provided, however, that under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**Repayment Terms.** The principal of and all accrued but unpaid interest on this Note shall be due and payable as follows: The outstanding principal balance of this Note, together with all accrued but unpaid interest, shall be due and payable on or before the Maturity Date.

All payments of principal or interest on this Note shall be made in lawful money of the United States of America in immediately available funds as the holder of this Note shall designate in writing to Borrowers. If any payment of principal of or interest on this Note shall become due on a day which is not a Business Day (as hereinafter defined), such payment shall be made on the next succeeding Business Day and any such extension of time shall be included in computing interest in connection with such payment. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which nationally chartered banking associations are ordinarily closed. All regularly scheduled payments of the indebtedness evidenced by this Note shall be applied first to any accrued but unpaid interest then due and payable hereunder and then to the principal amount then due and payable. To the extent that any interest is not paid on or before the fifth (5th) day after it becomes due and payable, the holder of this Note may, at its option, add such accrued interest to the principal of this Note. Notwithstanding anything herein to the contrary, upon an Event of Default (as hereinafter defined) or at maturity, whether by acceleration or otherwise, all principal of this Note shall, at the option of the holder of this Note, bear interest at a rate equal to prime plus 7% per annum until paid, subject to the provisions of this Note entitled "Compliance with Usury Laws."

**Prepayment without Penalty.** Borrower may from time to time prepay all or any portion of the outstanding principal balance of this Note without premium or penalty in accordance with an appropriate order of the bankruptcy court in the Borrower's bankruptcy case styled *In re Waco Town Square Partners, LP,* Case No. 11-38928-H2-11 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

EXHIBIT "B"

851120/00002/00012884.DOCX 1

**Advances**. Advances under the Note shall be made at the request of the Borrower pursuant written request to the DIP Lender. Requests must be submitted at least five (5) days prior to distribution of funds.

**Purpose.** Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all advances hereunder shall be used solely for maintaining the assets of the Borrower and continuing operation of the business.

**Administrative Claim.** DIP Lender shall be allowed an administrative expense claim as provided by 11 U.S.C. § 503(b) and 507(a) of the United States Bankruptcy Code.

**Event of Default.** Borrower agrees that upon the occurrence of any one or more of the following events of default ("Event of Default"):

(a) The Borrower fails to pay when due any installment of principal or interest on this Note owing by Borrower to Lender;

(b) The Bankruptcy Case is dismissed, a Chapter 11 Trustee is appointed, or converted to a case or cases under Chapter 7 of the Bankruptcy Code.

(c) A Chapter 11 plan of reorganization is proposed and confirmed in the Bankruptcy Case or an order approving sale of substantially all of the Debtor's assets without the consent and approval of the DIP Lender, unless such order proposes payment of this Note in full in cash on the sale closing date or the plan's effective date as the case may be;

(d) The Borrower defaults under the terms of any final order in the Bankruptcy Case approving, *inter alia,* this Note and/or the other Loan Documents; or

the holder of this Note may, at its option, without further notice or demand, (i) declare the outstanding principal balance of and accrued but unpaid interest on this Note at once due and payable, (ii) refuse to advance any additional amounts under the Note, (iii) pursue any and all other rights, remedies and recourse available to the holder hereof, at law or in equity, or (iv) pursue any combination of the foregoing; provided however, that when exercising such rights, the holder of this Note shall obtain a lifting or modification of the automatic stay under Section 362 of the Bankruptcy Code against the Borrower's property from the Bankruptcy Court, if necessary. The failure to exercise the option to accelerate the maturity of this Note or any other right, remedy or recourse available to the holder hereof upon the occurrence of an Event of Default hereunder shall not waive the right of the holder of this Note to exercise the same at that time or at any subsequent time with respect to such Event of Default or any other Event of Default. The rights, remedies and recourse of the holder hereof, as provided in this Note, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefore shall arise, at the sole discretion of the holder hereof. The acceptance by the holder hereof of any payment under this Note which is less than the payment in full of all amounts due and payable at the time of such payment shall not (i) constitute a waiver of or impair, reduce, release or extinguish any right, remedy or recourse of the holder hereof, or nullify any prior exercise of any such right, remedy or recourse, or (ii) impair, reduce, release or extinguish the obligations of any party liable herein.

**Compliance With Usury Laws**. This Note is intended to be performed in accordance with, and only to the extent permitted by, all applicable usury laws. Accordingly, notwithstanding any provision to the contrary in this Note, in no event whatsoever shall this Note require the payment or permit the payment, taking, reserving, receiving, collection or charging of any sums constituting interest under applicable laws which exceed the maximum amount permitted by such laws. If any such excess interest is called for, contracted for, charged, taken, reserved, or received in connection with this Note, or in any communication by any person to Borrower or any other person, or in the event all or part of the principal or interest shall be prepaid or accelerated, so that under any of such circumstances or under any other circumstance whatsoever the amount of interest contracted for, charged, taken, reserved, or received on the amount of principal actually outstanding from time to time under this Note shall exceed the maximum amount of interest permitted by applicable usury laws, then in any such event it is agreed as follows: (i) the provisions of this Section shall govern and control; (ii) neither Borrower nor any other person or entity now or hereafter liable for payments under this Note shall be obligated to pay the amount of such interest to the extent such interest is in excess of the maximum amount of interest permitted by applicable usury laws; (iii) any such excess which is or has been received notwithstanding this Section shall be credited against the then unpaid principal balance of this Note or, if this Note has been or would be paid in full by such credit, refunded to Borrower, and (iv) the provisions of this Note, and any communication to Borrower, shall immediately be deemed reformed and such excess interest reduced, without the necessity of executing any other document, to the maximum lawful rate allowed under applicable laws as now or hereafter construed by courts having jurisdiction hereof or thereof. Without limiting the foregoing, all calculations of the rate of interest contracted for, charged, taken, reserved, or received in connection herewith which are made for the purpose of determining whether such rate exceeds the maximum lawful rate shall be made to the extent permitted by applicable laws by amortizing, prorating, allocating and spreading during the period of the full term of this Note, including all prior and subsequent renewals and extensions, all interest at any time contracted for, charged, taken, reserved, or received..

**Costs of Collection: Waivers.** Borrower agrees to pay, in addition to all other sums payable hereunder, all costs and expenses of collection of this Note, including but not limited to reasonable attorneys' fees. Borrower and any and all endorsers and guarantors of this Note severally waive presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration and dishonor, diligence in enforcement and indulgences of every kind and without further notice hereby agree to renewals, extensions, exchanges or releases of collateral, taking of additional collateral indulgences or partial payments, either before or after maturity.

**GOVERNING LAW; VENUE; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.**
THIS NOTE SHALL BE GOVERNED BY AND BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF. THIS NOTE IS **PERFORMABLE** IN HARRIS COUNTY, TEXAS. BORROWER AGREES THAT HARRIS COUNTY, TEXAS SHALL BE THE EXCLUSIVE VENUE FOR LITIGATION OF ANY DISPUTE OR CLAIM ARISING UNDER OR RELATING TO THIS NOTE, AND THAT SUCH COUNTY IS A CONVENIENT FORUM IN WHICH TO DECIDE ANY SUCH DISPUTE OR CLAIM. BORROWER CONSENTS TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN HARRIS COUNTY, TEXAS FOR THE LITIGATION OF ANY SUCH DISPUTE OR CLAIM. BORROWERS IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT

MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

**WAIVER OF JURY TRIAL.** BORROWER HEREBYS IRREVOCABLY WAIVE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY TRANSACTION CONTEMPLATED HEREBY OR ASSOCIATED HEREWITH.

**FINAL AGREEMENT.** THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE DIP LENDER AND BORROWER WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BORROWER:

Waco Town Square Partners, LP

By:     Waco Town Square Management, LLC, its General Partner

By: _____

Name: _____

Title: _____

851120/00002/00012884.DOCX 1

SERVICE LIST
Waco Town Square Partners, LP
Case No. 11-38928-H2-11

| | | |
|---|---|---|
| Waco Town Square Partners, L.P.<br>13131 Dairy Ashford<br>Suite 175<br>Sugar Land, TX 77478 | Waco Town Square Partners II, LP<br>13131 Dairy Ashford<br>Suite 175<br>Sugar Land, TX 77478 | Hector Duran<br>Office of the United States Trustee<br>515 Rusk, Room 3516<br>Houston, TX 77002 |
| Texas Workforce Commission<br>Bankruptcy Section<br>P O Box 149080<br>Austin, TX 78714-9080 | Texas Comptroller of Public Accounts<br>111 E. 17th Street<br>Austin, TX 78774-0001 | Internal Revenue Service<br>Insolvency Section<br>1919 Smith MAIL STOP HOU 5022<br>Houston, TX 77002 |
| Internal Revenue Service<br>P O Box 7436<br>Philadelphia, PA 19101-7346 | City of Waco and Waco ISD<br>c/o Robert L. Meyers<br>McCreary, Veselka, Bragg & Allen, P.C.<br>P O Box 1669<br>Waco, TX 76703 | McLennan County, et al<br>c/o Douglas R. Bergen<br>Linebarger Goggan Blair & Sampson LLP<br>P O Box 1422<br>Waco, TX 76703 |
| **Secured Creditors:** | Community Bank & Trust of Waco<br>18th & Washington<br>1800 Washington<br>P O Box 2303<br>Waco, TX 76703 | Campus Advantage, Inc.<br>c/o Graham E. Sutliff<br>Sutliff & Stout PLLC<br>550 Post Oak Blvd., Suite 530<br>Houston, TX 77027 |
| Austin Avenue Flats HOA<br>330 Austin Avenue<br>Waco, TX 76701 | Brian P Cweren<br>3311 Richmond Avenue, Suite 305<br>Houston, TX 77098 | Clark Clark & Howell LLP<br>801 Washington Ave.<br>Suite 300<br>Waco, TX 76701 |
| CTWP Leasing<br>P O Box 6434<br>Carol Stream, IL 60197-6434 | Federal Express<br>P O Box 660481<br>Dallas, TX 75266-0481 | HD Supply Facilities Maintenance<br>P O Box 509058<br>San Diego, CA 92150-9058 |
| IRIO Irio, Inc.<br>15303 Dallas Parkway, Suite 150<br>Addison, TX 75001 | Jacobs Cathey Company<br>P O Box 7305<br>Waco, TX 76414 | JS Peevey Company LLC<br>213 Old Hewitt Road<br>Woodway, TX 76712 |
| Office Max Incorporated<br>P O Box 101705<br>Atlanta, GA 30392 | Pakis Giotes Page & Burleson<br>P O Box 58<br>Waco, TX 76703 | Thunderboards LLC<br>146 Circle Drive<br>Belton, TX 76513 |
| Web Bundles, LP<br>5757 Westheimer Road<br>Suite 3164<br>Houston, TX 77057 | Anthony M. Guerino, II<br>c/o Richard Daly Law Firm<br>1100 Louisiana, Suite 3500<br>Houston, TX 77002 | Ted M. Anthony<br>c/o Richard Daly Law Firm<br>1100 Louisiana, Suite 3500<br>Houston, TX 77002 |

**Parties Requesting Notice:**    Jeffrey R. Cox
Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Suite 500
Waco, Texas 76710