

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
07/24/2013

| | | |
|---|---|---|
| IN RE: | § | Case No. 11-38928 |
| WACO TOWN SQUARE PARTNERS, | § | Chapter 11 |
| L.P.; dba AUSTIN AVENUE FLATS | § | |
| and | § | |
| WACO TOWN SQUARE PARTNERS II, | § | |
| L.P., | § | |
| | § | |
| WACO TOWN SQUARE PARTNERS II, | § | CASE NO: 11-38929 |
| LP | § | |
| | § | |
| | § | CASE NO: 12-03144 |
| | § | Jointly Administered Order |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

Pursuant to the Order Confirming Waco Town Square Partners, LP ("WTSP") and Waco Town Square Partners II, LP's ("WTSP II") Third Amended Joint Chapter 11 Plan of Reorganization ("Confirmation Order"), NSJS Limited Partnership ("NSJS") was required to amend its First Amended Complaint in Adversary Proceeding 11-06025 to eliminate all derivative claims. NSJS brought several derivative claims in its First Amended Complaint, but failed to file its Second Amended Complaint within the deadline set forth in the Confirmation Order. NSJS did not have a meritorious defense for extending the deadline for filing the Second Amended Complaint. Based on its failure to meet its obligation under the Confirmation Order, NSJS's claims must be dismissed.

### Background

Defendant, David Wallace solicited the involvement of Defendant, Michael Wray in the development of a two-phase revitalization project in Waco, Texas. Case No. 11-38928, ECF No. 117-3 at 3. Phase I was to be used to develop commercial units and residential flats. Mr. Wray

approached many local investors, including NSJS, and developed a rapport with a loan officer at Defendant, Community Bank & Trust, Waco Texas ("Community Bank"). Case No. 11-38928, ECF No. 117-3 at 4.

Mr. Wray created WTSP as the entity formed to receive and advance capital and bear the financial risk for developing Phase I. Case No. 11-38928, ECF No. 117-3 at 4. Mr. Wray also created Waco Town Square Management, LLC ("WTSM") and named it the general partner in WTSP. Case No. 11-38928, ECF No. 117-3 at 4. Mr. Wray then formed WTSP II and its general partner, Waco Town Square Management II, LLC ("WTSM II") to develop Phase II. Case No. 11-38928, ECF No. 117-3 at 4.

NSJS was a limited partner in WTSP II. Case No. 11-38928, ECF No. 117-3 at 4. The terms of the WTSP II Partnership Agreement provided NSJS with a right to redeem its units at the par amount of its initial investment, plus a preferred return of ten percent per annum ("Redemption Right"). Case No. 11-38928, ECF No. 117-3 at 4.

Eventually, additional financing was needed to develop Phase I, and Community Bank required additional security or collateral to lend additional money. Case No. 11-38928, ECF No. 117-3 at 5. Mr. Wray pledged the Phase II property as collateral for the Phase I loan. Case No. 11-38928, ECF No. 117-3 at 5. Phase I construction concluded with a loan value that exceeded the value of the existing collateral by approximately $5 million. Case No. 11-38928, ECF No. 117-3 at 5. On or about June 30, 2010, Defendants sold the only asset owned by Phase II to Community Bank for $539,000. Case No. 11-38928, ECF No. 117-3 at 5.

On July 30, 2010, NSJS unsuccessfully attempted to exercise its Redemption Right. Case No. 11-38928, ECF No. 117-3 at 4-5. The net proceeds of the June 30 sale, which would have been more than sufficient to pay Phase II's contractual obligation to NSJS, were instead used to

pay Community Bank to help with development costs on Phase I.  Case No. 11-38928, ECF No. 117-3 at 6.

## Procedural History

NSJS initially filed a state court suit against Michael Wray, David Wallace, WTSM II, WTSP II, and Community Bank for fraud, conversion, breach of contract, breach of fiduciary duty, defalcation and violations of the Texas Theft Liability Act.[1]  ("State Court Litigation").  Case No. 11-06025, ECF No. 1 at 9-19.  Debtors removed the State Court Litigation to the bankruptcy court subsequent to filing Chapter 11 bankruptcy.[2]  Case No. 11-06025, ECF No. 1 at 1-5.

On February 16, 2012, the bankruptcy court remanded the adversary proceeding to state court based on the doctrine of mandatory abstention.  Case No. 11-06025, ECF No. 13.  On February 23, 2012, Debtors filed a Motion for Reconsideration of Order to Remand.  Case No. 11-06025, ECF No. 15.

On May 20, 2012, this Court entered the Confirmation Order.  Case No. 11-38928, ECF No. 89.  In pertinent part, it stated that:

> "To the extent that NSJS holds any claims, plead or unplead, belonging to it and not to the Debtors or their respective estates, against any person or entity, other than the Debtors or their estates, NSJS may pursue such claims and nothing in this Order shall bar, enjoin, limit or impair NSJS from pursuing such claims. Further within forty-five (45) days of the entry of this Order, NSJS shall amend its complaint in Adversary Proceeding No. 11-06025, NSJS Limited Partnership and Waco Townsquare Partners II, LP v. Waco Town Square Management, II, LLC, Waco Town Square Partners II, LP and Community Bank & Trust pending in the United States Bankruptcy Court for the Western District of Texas, Waco Division (removed Case No. 2010-4220-5 formerly pending in the 414th Judicial District, McLennan County, Texas) to remove any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of

---

[1] Wallace Bajjali Development Partners, LP was added as a defendant in the First Amended Complaint.

[2] The lawsuit was removed to the United States Bankruptcy Court for the Western District of Texas.

the Debtors or the Bankruptcy Estates and/or on account of the Debtors' Cases ("Amended Complaint"). If an Amended Complaint is not filed within the time period proscribed in this Order, all claims contained in the NSJS Lawsuit shall be deemed claims and causes of action arising that may be asserted by or on behalf of the Debtors or their Bankruptcy Estates and/or on account of the Debtors' Cases and must be immediately dismissed with prejudice in accordance with Article 13.9 of the Plan."

Case No. 11-38928, ECF No. 89 at 11-12.

On June 4, 2012, the Debtors' Motion for Reconsideration was denied. Case No. 11-06025, ECF No. 26.

On November 7, 2012, Debtors' counsel advised NSJS's counsel that since the complaint had not been amended, the State Court Litigation must be dismissed with prejudice, and that if the suit was not dismissed, Debtors would seek contempt sanctions against NSJS. Case No. 11-38928, ECF No. 106 at 6. On December 14, 2012, Debtors' counsel received a copy of NSJS's Second Amended Complaint. Case No. 11-38928, ECF No. 117-3. Debtors were no longer listed as a party in the State Court Litigation, but no party had been formally dismissed from the litigation. Case No. 11-38928, ECF No. 117-3.

On January 1, 2013, Debtors filed their Motion to Hold NSJS in Contempt for Violation of Confirmation Order and For Sanctions. Case No. 11-38928, ECF No. 106. On February 21, 2013, NSJS filed a response arguing that Debtors were attempting to use the Motion for Sanctions to get a second bite at the apple regarding whether NSJS's claims in the State Court Litigation were derivative causes of action belonging to the Debtors.[3] Case No. 11-38928, ECF No. 110 at 4.

---

[3] This Court, in its Memorandum Opinion issued on April 23, 2013, held that res judicata did not bar the Court from deciding whether the claims in NSJS's Second Amended Complaint were derivative causes of action. ECF No. 140. On May 29, 2013, an evidentiary hearing was held on whether the claims in the second amended complaint were derivative claims.

## Analysis

### *The Order was Final*

> The provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C.A. § 1141.  A bankruptcy court's confirmation order is binding and final, and the court gives it the weight of a final judgment.  *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992).  A deadline listed in a bankruptcy court's confirmation order is therefore also binding and final.  Consequently, the deadline to amend the complaint within forty-five days was final and binding on NSJS.

### *The Order was unambiguous*

The Bankruptcy Court's Confirmation Order provides as follows:

> "Within forty-five (45) days of the entry of this Order, NSJS shall amend its complaint in Adversary Proceeding No. 11-06025…to remove any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtors or the Bankruptcy Estates and/or on account of the Debtors' Cases ("Amended Complaint").  If an Amended Complaint is not filed within the time period proscribed in this Order, all claims contained in the NSJS Lawsuit shall be deemed claims and causes of action arising that may be asserted by or on behalf of the Debtors or the Bankruptcy Estates and/or on account of the Debtor' Cases and must be immediately dismissed with prejudice in accordance with Article 13.9 of the Plan."

ECF No. 89 at 12.

If even one claim was derivative, and NSJS did not amend the complaint within forty-five days, it would lose all possible claims.

*The First Amended Complaint had derivative claims, and thus needed to be amended*

NSJS asserts that the Frist Amended Complaint contained no derivative causes of action, and therefore it did not need to be amended. NSJS relies on the June 4 Order issued in Case No. 11-06025, for its belief that none of the claims were derivative. The Order provides in pertinent part that, "despite WTSP's assertions, this proceeding does not appear to meet the definition of a derivative action, either in form or in substance." Case No. 11-06025, ECF No. 26.

This Court found that res judicata did not prevent it from determining whether the causes of action in the First Amended Complaint were derivative, despite the language in the June 4 Order. *See* ECF No. 140. At the May 29, 2013 hearing however, the Court noted that although ultimately wrong, NSJS' reading of the June 4 Order was not frivolous.[4] Regardless, the Court finds that the First Amended Complaint contained several derivative claims. This means that the Complaint was required to have been amended within 45 days of entry of the Confirmation Order.[5]

In determining whether each of NSJS' causes of actions is derivative or direct, the Court must look to state law to determine whether WTSP II (the partnership itself) could have raised these causes of action. *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 695 (Bankr. S.D. Tex. 2007) (citing *In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)). If WTSP II could have raised the claims, they are derivative to claims of the partnership, and should have been amended out of NSJS' First Amended Complaint. *Id.* (citing *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1276 (5th Cir. 1983)).

---

[4] Because the Court found that NSJS' failure to amend was not frivolous, WTSP and WTSP II's Motion for Sanctions is denied.

[5] Even if NSJS did not successfully remove every derivative claim, a good faith attempt to remove all derivative claims from the complaint would have been sufficient to comply with the Confirmation Order. *See* ECF No. 89 at 12.

WTSP II is a Texas Limited Partnership.  *See* NSJS Exhibit 13.  The general rule under Texas corporation law is that a shareholder does not have an independent cause of action for injury to the corporation, even if the shareholder is harmed by the wrong.  *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990).  A corporate shareholder may have a direct cause of action where the wrongdoer violates a duty owed directly to the shareholder.  *Faour, et al. v. Faour*, 789 S.W.2d 620, 622 (Tex. App.—Texarkana 1990).  While there are no directly applicable Texas state law cases regarding partnerships, many courts apply this same test to determine whether suits by partners are derivative or direct.  *See, e.g. Draper Fisher Jurvetson Mgmt. Co V, LLC, et al. v. I-Enterprise Co LLC*, 2004 WL 2944055, at *7 (N.D. Cal. Dec. 15, 2004) (in determining whether a cause of action is derivative or direct, courts must determine whether claimed injury is incidental to, or independent of an injury to the partnership); *see also Fulco, et al. v. Continental Cablevision, Inc., et al.*, 1990 WL 120689, at *4 (D. Mass. June 19, 1990) (some provisions of limited partnership agreement can be enforced by individual limited partner when duty owed primarily to the partner individually).

NSJS' first cause of action in the First Amended Complaint was for breach of contract.  ECF No. 1 at 65.  NSJS asserted that Mr. Wray and Mr. Wallace's conduct breached the WTSP II Partnership Agreement.  NSJS' claim for breach of the partnership agreement is both derivative and direct.  NSJS claims that the sale of the Phase II land breached the partnership agreement.  This is a derivative cause of action.  The sale of all of the partnerships assets harmed the partnership itself because the only asset of WTSP II (the Phase II land) was sold for the benefit of WTSP.  NSJS further alleged that Defendants' breached the partnership agreement by failing to honor NSJS' Redemption Right.  This is a direct claim because no other partner had this Redemption Right.

NSJS' second cause of action was for conversion. NSJS alleged that Defendants unlawfully assumed dominion and control over NSJS' property rights in its partnership units by failing to redeem the units to NSJS. NSJS' Redemption Right was unique in that no other partner in WTSP II possessed a right to redeem its partnership units. Because this cause of action is held only by NSJS, it is a direct claim.

NSJS' third cause of action was for fraud. NSJS alleged that it relied on Defendants' representations and fraudulent concealment of facts, resulting in damage to NSJS. It is not clear from the First Amended Complaint when the alleged fraudulent conduct occurred. If, for example, NSJS was alleging that it was fraudulently induced to invest in WTSP II, this would be a direct cause of action. *See Mallia, et al. v. Painewebber, Inc., et al.*, 889 F. Supp. 277, 282-283 (S.D. Tex. 1995). It is also conceivable however that the specific facts would reveal a derivative claim. The Court need not reach a determination on this question because the Court finds that at least one of NSJS' other causes of action in the First Amended Complaint was derivative.

NSJS' fourth cause of action alleged a breach of fiduciary duty. NSJS asserted that WTSP II, WTSM II, Mr. Wray, Mr. Wallace and Mr. Bajjali owed NSJS a fiduciary duty. NSJS asserted that the Defendants breached their fiduciary duty to NSJS by pledging Phase II property as security for Phase I loans, refusing to redeem NSJS' partnership units, reselling the Phase II property to Defendant Community Bank, and spending the sales proceeds on unidentified partnership expenses. NSJS further alleged that Community Bank was a joint tortfeasor in these breaches, because it knowingly participated, or directly controlled the breaches of fiduciary duty. At least part of this claim is derivative. The pledging of the Phase II property and the use of the sales proceeds on unidentified partnership expenses is a breach Defendants' fiduciary duties owed to WTSP II. Any harm to NSJS is dependent on the harm to the partnership.

NSJS' fifth cause of action alleged that Mr. Wray, Mr. Wallace, Mr. Bajjali, WTSP II and WTSM II committed defalcation by inadequately accounting for monies loaned by NSJS to WTSP II in breach of their fiduciary duties. Alternatively, NSJS argued that the Defendants committed defalcation by misapplying NSJS' investment funds in contravention of the partnership agreement. The duty to account for monies loaned to the partnership is a duty owed to all partners, as inadequate accounting harms the partnership itself. The same is true for misapplication of investment funds. These alternative claims for defalcation are derivative.

NSJS' sixth and final cause of action was for violation of the Texas Theft Liability Act. NSJS claimed a possessory right to over $239,287.67 of the $299,000 net proceeds from the sale of WTSP II's land to Community Bank. NSJS alleged that WTSP II, WTSM II and Mr. Wray, Mr. Wallace and Mr. Bajjali unlawfully appropriated, secured or stole NSJS' initial redemption amount with the intent to deprive NSJS of such money. NSJS brought this claim for the Redemption Right it alleges it is owed. As discussed *supra*, no other partner had a right of redemption. NSJS' claim under the Texas Theft Liability Act is a direct claim.

Because the First Amended Complaint contained at least one derivative claim, NSJS was required to file a second amended complaint within forty-five days.

*NSJS failed to amend in time and had no meritorious defenses*

NSJS next argues that even if the Court finds some of the claims in the First Amended Complaint to be derivative causes of action, it would have been impossible for it to comply with the Confirmation Order. NSJS argues that paragraphs 22 and 23 of the Confirmation Order only envision a scenario in which the Western District retained jurisdiction over the adversary proceeding, either by failing to timely rule on the reconsideration motion, or by deciding to retain the case.

The Court does not accept this argument. The adversary proceeding had already been remanded at the time the Confirmation Order was issued. Although there was a pending Motion for Reconsideration of the remand order, NSJS should have known that the Confirmation Order referred to the now remanded Adversary Proceeding. NSJS did not object to the language of the Confirmation Order, nor did it ask that the Order be clarified when the Order Denying Motion for Reconsideration was denied on June 4, 2012—well within the 45 day period that NSJS had to amend the complaint in the adversary proceeding. In light of these facts, NSJS cannot meet its burden on the argument that it failed to amend the complaint in good faith.

NSJS next argues that if it did in fact violate the Confirmation Order, it was due to excusable neglect. Federal Rule of Bankruptcy Procedure 9006 provides as follows:

> "When an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion […] on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

Excusable neglect with regards to late filings may be caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 388, 113 S. Ct. 1489, 1495, 123 L. Ed. 2d 74 (1993).

> In determining whether the negligence was excusable, the determination is an equitable one, taking account of all relevant circumstances surrounding the party's omission, including (i) the danger of prejudice to the debtor, (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith.

*Id*. at 395.  Moreover, the requirement of excusable neglect should be construed so as to "deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." *Id*. at 403-04.

NSJS presented no evidence that it had committed excusable neglect.  NSJS called one witness, Mr. James Bonnett, a partner in NSJS.  Mr. Bonnett provided no testimony supporting NSJS' claim of excusable neglect.  NSJS proffered its exhibits one through seventeen.  Exhibits one through seventeen were subsequently admitted—none of which support a claim for excusable neglect.  NSJS' counsel, Mr. Patrick Atkins, merely argued that NSJS committed excusable neglect, but proffered no evidence to support this argument.  Without evidence of excusable neglect, NSJS does not have a meritorious defense for its untimely filing of the Second Amended Complaint.

Consequently, pursuant to the Confirmation Order issued May 20, 2012, NSJS' state court suit, (Cause No. 2010-4220-5, in the 414th Judicial District Court of McLennan County, Texas), must be dismissed in its entirety.

## Conclusion

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **July 24, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE