

ENTERED
02/11/2015

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| WACO TOWN SQUARE PARTNERS, L.P.; § | CASE NO: 11-38928 | |
| dba AUSTIN AVENUE FLATS, *et al* § | | |
| § | | |
| WACO TOWN SQUARE PARTNERS II, § | CASE NO: 11-38929 | |
| LP § | | |
| § | | |
| § | CASE NO: 12-03144 | |
| § | Jointly Administered Order | |
| Debtor(s) § | | |
| § | CHAPTER 11 | |

## MEMORANDUM OPINION

The Court issued an order requiring NSJS Limited Partnership to dismiss a lawsuit pending in the 414th Judicial District Court of McLennan County, Texas on July 24, 2013. This requirement was pursuant to the Order Confirming Waco Town Square Partners, LP (WTSP) and Waco Town Square Partners II, LP's (WTSP II) Third Amended Joint Chapter 11 Plan of Reorganization. On appeal, the District Court remanded for further consideration of this Court's constitutional authority, the requirements of the Confirmation Order, and NSJS's excusable neglect defense. Having considered the issues raised by the District Court, NSJS's claims must be dismissed.

### Factual Background

A detailed recitation of the factual background of this case is included in both this Court's July 24, 2013 Memorandum Opinion and the District Court's March 13, 2014 Opinion. (ECF Nos. 155; 194). In brief, Defendants David Wallace and Michael Wray created Waco Town Square Partners, L.P. and Waco Town Square Partners II, L.P. for the development of a two-phase revitalization project in Waco, Texas. (ECF No. 155 at 1). Plaintiff NSJS Limited

Partnership invested $200,000.00 into WTSP II in exchange for 2,083.33 units in the partnership. (ECF No. 194 at 3). Under the terms of WTSP II's partnership agreement, NSJS had a right to redeem its units at the par amount of its initial investment, plus a preferred return of ten percent per annum. (ECF No. 155 at 2).

During construction of the first phase, Wray realized that WTSP needed additional financing. He obtained a loan from Defendant Community Bank and pledged the WTSP II property as collateral for the WTSP loan. *Id.* When construction of Phase I finished, the outstanding loan amount exceeded the value of the collateral by some $5,000,000.00. *Id.* WTSP II sold its only asset, a vacant lot, and lent the proceeds to WTSP to reduce WTSP's indebtedness to Community Bank. (ECF No. 194 at 3). On July 30, 2010 NSJS tried to exercise its redemption rights under the partnership agreement. *Id.* Because WTSP II had sold its only asset, there were no remaining funds to pay NSJS the redemption value.

## Procedural Posture

NSJS filed a state court lawsuit against Michael Wray, David Wallace, WTSM II (the general partner of WTSP), WTSP II, and Community Bank in state court in McLennan County, Texas for fraud, conversion, breach of contract, breach of fiduciary duty, defalcation, and violations of the Texas Theft Liability Act. (ECF No. 155 at 3). WTSP filed for chapter 11 protection on October 21, 2011 before this Court. WTSP II filed a month later and the state court lawsuit was subsequently removed to the Bankruptcy Court for the Western District of Texas.[1] On February 16, 2012 the bankruptcy court remanded the state court lawsuit back to state court on mandatory abstention grounds. *Id.* WTSP II filed a motion for reconsideration, arguing that remand was improper because certain of NSJS's claims were derivative and as such

---

[1] The WTSP and WTSP II bankruptcies are jointly administered as Case No. 11-38928.

property of the bankruptcy estate.  On May 30, 2012, this Court issued a Confirmation Order for WTSP II's bankruptcy proceeding.  (ECF No. 89).  The order provided that:

> To the extent that NSJS holds any claims, plead or unplead, belonging to it and not to the Debtors or their respective estates, against any person or entity, other than the Debtors or their estates, NSJS may pursue such claims and nothing in this Order shall bar, enjoin, limit, or impair NSJS from pursuing such claims.  Further, within forty-five (45) days of the entry of this Order, NSJS shall amend its complaint in Adversary Proceeding No. 11-06025 . . . pending in the United States Bankruptcy Court for the Western District of Texas, Waco Division (removed Case No. 2010-4220-5 formerly pending in the 414th Judicial District, McLennan County, Texas) to remove any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtors or the Bankruptcy Estates and/or on account of the Debtors' Cases ("Amended Complaint").  If an Amended Complaint is not filed within the time period proscribed [*sic*] in this Order, all claims contained in the NSJS Lawsuit shall be deemed claims and causes of action arising that may be asserted by or on behalf of the Debtors or the Bankruptcy Estates and/or on account of the Debtors' Cases and must be immediately dismissed with prejudice in accordance with Article 13.9 of the Plan.

(Case No. 11-38928; ECF No. 89).  On June 14, 2012 the Bankruptcy Court in the Western District denied WTSP II's motion for reconsideration.  (ECF No. 126-2).  That court held that the state court suit did "not appear to meet the definition of a derivative action, either in form or in substance." *Id.* at 10.

On November 7, 2012, WTSP II's counsel sent a letter to NSJS advising them that, since the state court complaint had not been amended within the 45-day deadline prescribed by the confirmation order, the suit must be dismissed with prejudice.  (ECF No. 106 at 6).  NSJS continued to assert the suit contained no derivative claims.  Nevertheless, on December 14, 2012 NSJS filed a Second Amended Complaint in state court removing WTSP II as a defendant and deleting all claims that were arguably derivative.

WTSP II filed a motion to hold NSJS in contempt for violation of the confirmation order on January 1, 2013.  (ECF No. 106).  On May 29, 2013 the Court held an evidentiary hearing and

took the matter under advisement. On July 24, 2013 the Court issued an opinion finding that NSJS's First Amended Complaint contained several derivative causes of action.[2] (ECF No. 155). The Court rejected NSJS's argument that any failure to amend the complaint was due to excusable neglect. Because NSJS did not amend its complaint within the confirmation order deadline, the Court ordered NSJS to dismiss the state court suit in its entirety. (ECF No. 156). However, the underlying motion to hold NSJS in contempt was denied.

NSJS appealed the decision to the District Court. On March 13, 2014, the District Court issued a Memorandum Opinion and Order affirming the denial of the motion for contempt but remanding the case as to the requirement that NSJS dismiss its state court lawsuit. (ECF No. 194). The District Court requested clarification on three issues: (1) the Bankruptcy Court's authority to order a non-debtor to dismiss a lawsuit in state court; (2) apparent inconsistencies contained within the May 30, 2012 confirmation order; and (3) further consideration of whether NSJS's failure to amend its complaint in time was the result of good faith and/or excusable neglect. *Id.* On June 30, 2014 the Court held a hearing and ordered the parties to file briefs on how best to implement the District Court's Order.

## Analysis

### I. Bankruptcy Court's Authority

a. *Stern v. Marshall*

The District Court order noted that "[i]n light of the United States Supreme Court's decision in *Stern v. Marshall*, it is questionable whether a bankruptcy court's power under § 105(a) extends to requiring the dismissal with prejudice of 'state law causes of action by non-debtors against non-debtors.'" (ECF No. 194 at 8). *Stern v. Marshall* made clear that a

---

[2] NSJS's breach of contract, breach of fiduciary duty, and defalcation claims were derivative because they also could have been asserted by WTSP II. (ECF No. 106 at 8-9).

bankruptcy court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. 131 S.Ct. 2594, 2620 (2011). The Court may, however, exercise authority over essential bankruptcy matters under the "public rights exception." Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Virginia Cmty. College v. Katz,* 546 U.S. 356, 363–64 (2006); *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern,* 131 S.Ct. at 2614 ("We noted [in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 56 n. 11 (1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

Many bankruptcy proceedings likely fall outside the "public rights" exception. The Supreme Court has held, for example, that a fraudulent conveyance suit against a party that has not filed a claim against the estate falls outside of any "public rights exception" that would allow adjudication by a bankruptcy judge without a jury. *Granfinanciera,* 492 U.S. at 55–56. Under *Stern,* the Court's authority over state law matters is particularly questionable.

    b. *The July 24 Order sought to enforce the May 30, 2012 Confirmation Order*

The District Court questioned whether this Court had the authority to issue the July 24, 2013 Order requiring NSJS to dismiss its state law claims with prejudice. The July 24 Order

merely enforced the terms of this Court's prior Confirmation Order, which required NSJS to dismiss all derivative claims within 45 days or dismiss the entire lawsuit. Section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's statutory power under § 105(a) is not unlimited. *See In re Amco Ins.*, 444 F.3d 690, 695 (5th Cir. 2006). However, it is axiomatic that a court possesses the inherent authority to enforce its own orders. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (holding that in order for a court to function successfully it must be able to manage its proceedings, vindicate its authority, and effectuate its decrees). *Stern* does not limit this Court's authority to issue an order enforcing a valid prior order. *In re Skyport Global Commc'ns, Inc*, 2013 WL 4046397 at *40 (Bankr. S.D. Tex. Aug. 7, 2013); *In re River Entm't Co.*, 467 B.R. 808, 817 (Bankr. W.D. Penn. 2012) (holding that *Stern* did not prevent the bankruptcy court from enforcing the terms of a consent order which fell within the public rights exception); *CD Liquidation Co. v. Paladini (In re CD Liquidation Co.)*, 462 B.R. 124, 136 (Bankr. D. Del. 2011) (holding that the bankruptcy court could enforce a confirmation order issued under proper authority). If this Court had authority to issue the Confirmation Order, then it possessed the "most basic and intrinsic authority . . . of any court" to enforce that order. *CD Liquidation*, 462 B.R. at 136.

A confirmation order is a final order. *In re Davis Petroleum Corp.*, 2009 WL 3448186 at *3 (Bankr. S.D. Tex. Oct. 21, 2009); *In re Jones*, 352 B.R. 813, 819 (Bankr. S.D. Tex. 2006) ("[C]onfirmation orders concerning chapter 11 plans are clearly final orders."). The Confirmation Order at issue mandated that NSJS file an amended complaint dismissing all derivative causes of action in its suit pending in the Western District Bankruptcy Court. If it

failed to do so, all claims in the lawsuit would automatically be deemed derivative claims and NSJS would be required to dismiss the lawsuit immediately. By its terms, the Confirmation Order is a self-executing final order requiring dismissal with prejudice over state law claims asserted by a non-debtor against several non-debtors. A *Stern* analysis is appropriate.

    c.   *This Court Had Authority to Issue a Final Order Regarding Claims Brought Against Debtor and Those Claims That Were Property of the Estate*

NSJS's First Amended Petition (the subject of the Confirmation Order) brought claims against Michael Wray, David Wallace, WTSM II, WTSP II, Community Bank & Trust, and Wallace Bajjali Development Partners. (ECF No. 131-10 at 1). WTSP II is currently a debtor before this Court. "It is a fundamental function of bankruptcy law . . . to make determinations regarding claims against the estate." *In re Murdock*, 337 B.R. 308, 310 (Bankr. N.D. Ohio 2005). The determination of claims against the estate lies at the heart of federal bankruptcy power. *Century Brass Prod., Inc. v. Millard Metals Serv. Ctr., Inc. (In re Century Brass Prod., Inc.)*, 58 B.R. 838, 846 (Bankr. D. Conn. 1986). A claim against the estate is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).[3] A bankruptcy court's authority to enter final orders in such matters has never been in doubt, even after *Stern*. 1 *Collier on Bankruptcy* ¶ 3.02[3][a] (16th ed. 2012). NSJS's claim against WTSP II is not seeking to augment the bankruptcy estate but instead is seeking a pro rata share of the bankruptcy res. *See Stern*, 131 S.Ct. at 2618. Accordingly, the Court had authority to issue a final order dismissing NSJS's state-law claims against WTSP II.

NSJS's First Amended Petition brought additional claims which are property of the bankruptcy estate. In the July 24, 2013 Memorandum Opinion this Court held that several of the

---

[3] "Core proceedings include . . . (B) allowance or disallowance of claims against the estate. . . ." 28 U.S.C. § 157(b)(2).

asserted causes of action were derivative and as such property of WTSP II.[4]  (ECF No. 155).  In addition,  NSJS's petition alleges that "there was such unity between Waco Town Square Management II, LLC and Waco Town Square Partners II and Defendants Wray, Wallace, and Wallace Bajjali Development Partners, LP" that to consider the Defendants separate entities would result in injustice.  (ECF No. 130-10 at 16).  Alter ego claims such as these may also be asserted by WTSP II, and accordingly are property of the bankruptcy estate.  *S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1153 (5th Cir. 1987). Alter ego claims are typically asserted by an entity's creditors, such as is the case here.  However, nothing in Texas Law prevents WTSP II from asserting its own action based on alter ego theories.  *Id.*  NSJS's alter ego claims belong to WTSP II and are property of the estate within the meaning of 11 U.S.C. § 541(a).  *Id.*

Exercising authority over estate property is a fundamental power of a bankruptcy court. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) ("Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property. . . .").  *See also Brown v. Fox Broadcasting Co. (In re Cox)*, 433 B.R. 911, 919 (Bankr. N.D. Ga. 2010) ("[T]wo of the fundamental purposes of a bankruptcy court [are] the exercise of jurisdiction over the estate of the debtor and the equitable distribution of the estate's property among creditors"); *In re Auto. Prof'l Inc.*, 370 B.R. 161, 182 (Bankr. N.D. Ill. 2007) ([T]he obligation to obtain control of assets of the estate is a bankruptcy power even more fundamental than the right to retrieve preferential payments.").  In addition, 28 U.S.C. § 1334(e) grants the district court in a bankruptcy proceeding "exclusive jurisdiction" of all property of the debtor and

---

[4] The breach of contract claim was derivative to the extent it sought relief for the sale of the Phase II land.  Claims for breach of fiduciary duties stemming from the pledging of the Phase II property and the expenditure of the proceeds were also derivative.  Finally, the defalcation claims were derivative.

of the bankruptcy estate.[5] By filing a lawsuit containing derivative and alter ego claims in state court, NSJS interfered with the bankruptcy estate. Preventing this interference with the bankruptcy estate is an essential bankruptcy matter and accordingly falls within the public rights exception. *See In re N.C. Hosp. Assoc. Trust Fund, Emp'r ID No.: 56-1154690*, 112 B.R. 759, 763 (Bankr. E.D.N.C. 1990) (holding that the protection of the bankruptcy estate is a public right). The Court had constitutional authority to issue the Confirmation Order to the extent it required dismissal of claims which were the property of the bankruptcy estate.

>  d.  *NSJS May Not Challenge the Enforceability of the Confirmation Order*

NSJS's First Amended Complaint contained claims which were not property of the estate. For example, NSJS made no alter ego claims against Defendant Community Bank. It is doubtful that this Court had constitutional authority to issue a Confirmation Order which required dismissal of NSJS's state-law claims against Community Bank. As discussed above, however, the Confirmation Order was a final order requiring dismissal of NSJS's complaint should it fail to amend its complaint in a timely fashion. If NSJS had doubts as to the Court's constitutional authority, the proper avenue to raise these doubts was an appeal of the Confirmation Order. NSJS remained silent until February 21, 2013 when it filed its response to Debtor's motion for contempt—almost a year after the original Confirmation Order.

The right to challenge the constitutionality of an order is not timeless. "Ordinarily, the finality of a Bankruptcy Court's orders following the conclusion of direct review would stand in the way of challenging their enforceability." *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 268 (2010) (internal quotation marks omitted). 11 U.S.C. § 1141(a) states that "[T]he provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not the claim

---

[5] A district court may in turn "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." A confirmation order is binding and final and is accorded the weight of a final judgment for res judicata purposes. *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992); *see also* J. Stephen Gilbert, *Substantive Consolidation in Bankruptcy: A Primer*, 43 Vand. L. Rev. 207, 239 n. 235 (1990) ("Like final judgments, confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by the doctrine of res judicata.").

The Supreme Court has repeatedly held that with regards to subject-matter jurisdiction, a bankruptcy court's final orders are not subject to later collateral attack based on a jurisdictional challenge. *Traveler's Indem. Co. v. Bailey*, 557 U.S. 137, 147 (2009); *see also Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938).[6] Indeed, if a party to the bankruptcy action is given a fair opportunity to challenge a bankruptcy court's subject matter jurisdiction, it cannot then challenge it by resisting enforcement of the court's orders. *Bailey*, 557 U.S. at 153, *citing Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9 (1982) ("A party that has had an opportunity to litigate the question of subject matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment."). Clarifying this general rule, the Fifth Circuit specifically held that "[q]uestions of the propriety or legality of the bankruptcy court order are indeed properly addressable on direct appeal. [Plaintiff], however, is now foreclosed from that avenue of review because it chose not to pursue it." *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987).

---

[6] Article III, section 2 of the Constitution defines the maximum reaches of a federal court's subject-matter jurisdiction. *Escobedo v. Estelle*, 655 F.2d 613, 614 (5th Cir. 1981). Although a bankruptcy court's constitutional authority over a case following *Stern v. Marshall* is a separate issue from its subject-matter jurisdiction, the Court fails to understand how an untimely challenge could negate one constitutional defect but not another.

The rule precluding challenge to a court's subject-matter jurisdiction once the time for direct appeal has passed should be applied with equal force to a bankruptcy court's constitutional authority to issue a confirmation order. The *Stern* majority itself acknowledged that a party can forfeit its right to challenge a bankruptcy court's constitutional authority by failing to make a timely objection. "No procedural principal is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Stern v. Marshall*, 131 S.Ct. 2594, 2608 (2011) (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993)) (internal quotation marks omitted). As the Supreme Court noted, if NSJS questioned this Court's authority to issue a final confirmation order, "[it] should have said so—and said so promptly." *Stern*, 131 S.Ct. at 2608. When a confirmation order stands without appeal, a court's tacit determination of constitutional authority becomes res judicata.

In *In re Sunra Coffee, LLC*, the bankruptcy appellate panel for the Ninth Circuit held that a litigant's *Stern* challenge came too late under similar circumstances to the instant case. The bankruptcy court entered a judgment against a defendant in an adversary proceeding based on state law causes of action on September 17, 2010. 2012 WL 3590754 at *1-2 (B.A.P. 9th Cir. Aug. 21, 2012) (unpublished opinion). Defendant did not oppose or appeal the judgment. *Id.* at *2. On March 14, 2011 Plaintiff obtained a writ of execution from the bankruptcy court in order to enforce the judgment against Defendant. *Id.* At this point, Defendant made his first appearance in the case and requested that the court delay execution of the writ pending an evidentiary hearing. *Id.* The court granted this request and scheduled a hearing for July 5, 2011. On June 23, 2011, the Supreme Court decided *Stern v. Marshall*. *Id.* at *3. Defendant raised subject matter jurisdiction and constitutional authority objections for the first time at the

evidentiary hearing.[7] *Id.* The bankruptcy court overruled Defendant's objection to the writ of execution and the BAP affirmed. Because Defendant failed to appeal the original judgment and then attempted to resist enforcement of that judgment, the BAP held that his constitutional challenge was not timely. *Id.* at *5. The Fifth Circuit has also affirmed the validity of a bankruptcy court's final order where Appellants brought a *Stern* objection eighteen months after the appellate period had passed, although the court did not provide its basis for doing so. *Kornman v. Faulkner (In re Heritage Org., L.L.C.)*, 544 Fed. Appx. 512 (5th Cir. 2013) (per curiam).

NSJS waited even longer than the *Sunra Coffee* Defendant to assert its *Stern* objection to the Confirmation Order. Almost a year elapsed from when the Court issued the Confirmation Order until NSJS challenged the Court's authority to issue that order. Indeed, at an April 26, 2012 confirmation hearing, counsel for NSJS raised a *Stern* objection to a bankruptcy court *trying* its state-law claims but stipulated to a provision in the confirmation order providing dismissal of derivative claims. NSJS consented to the application of a final order regarding its state law claims. Although one cannot consent to a *Stern* adjudication when the Court has no authority (*In re BP RE, L.P.*, 735 F.3d 279 (5th Cir. 2013)), NSJS's consent is simply a further indication that it was aware of the order and chose not to appeal it. It was only when it actually faced dismissal of its claims pursuant to that unappealed order—long after the appellate period had passed—that it belatedly objected. Accordingly, NSJS has forfeited its right to challenge the Court's constitutional authority to issue the Confirmation Order.

## II.    Confirmation Plan Requirements

---

[7] Defendant framed his *Stern* challenge in terms of subject-matter jurisdiction, however it is readily apparent that he was actually challenging the court's constitutional authority.

The District Court order remanded for further consideration of several apparent inconsistencies or ambiguities contained within the Confirmation Order.  In the July 24, 2013 Memorandum Opinion, this Court held that the Confirmation Order was unambiguous.  (ECF No. 155 at 5).  After further consideration of the apparent issues noted by the District Court, this Court changes its previous finding of unambiguity.  The first ambiguity contained within the Confirmation Order is that it requires NSJS to "amend its complaint in Adversary Proceeding No. 11—06025 . . . pending in the United States Bankruptcy Court for the Western District of Texas, Waco Division (removed Case No. 2010-4220-5 formerly pending in the 414th Judicial District, McLennan County, Texas)" within 45 days.  However, Adversary Proceeding No. 11—06025 had been remanded by the Western District Bankruptcy Court to state court on February 16, 2012.  Under a literal interpretation of the Confirmation Order, NSJS could not amend its complaint in Adversary Proceeding No. 11—06025 because no such adversary proceeding was in fact pending in the Western District.

The District Court next pointed to a provision of the Confirmation Order which stated that "[t]o the extent that NSJS holds any claims . . . belonging to it and not to the Debtors . . . NSJS may pursue such claims and nothing in this Order shall bar, enjoin, limit, or impair NSJS from pursuing such claims."  Shortly after this provision, the Confirmation Order mandates that if "an Amended Complaint is not filed within the time period proscribed in this Order, all claims contained in the NSJS Lawsuit shall be deemed [derivative claims] and must be immediately dismissed with prejudice."  This Court agrees with the District Court that these provisions "seem inconsistent."  If a direct claim is deemed a derivative claim because of NSJS's failure to amend the complaint, it nevertheless remains a direct claim.  Accordingly, the provision mandating dismissal of NSJS's entire complaint is inconsistent with the earlier language protecting NSJS's

ability to prosecute direct claims. Having found that the Confirmation Order contains ambiguities, the Court will determine whether these ambiguities allow NSJS to claim excusable neglect.

### III. Excusable Neglect

NSJS contends its failure to amend the complaint constituted good faith or excusable neglect. In the July 24 Opinion the Court found that NSJS had not demonstrated good faith or excusable neglect. The District Court remanded for further consideration, holding that this Court may not have properly considered NSJS's documentary evidence on the issue.

Bankruptcy Rule 9006(b)(1) states that "when an act is required or allowed to be done at or within a specified period . . . by a notice given . . . by order of court, the court for cause shown may at any time in its discretion . . . permit the act to be done where the failure to act was the result of excusable neglect." A determination of excusable neglect is "at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). A district court judge enjoys "broad discretion" to grant or deny an extension. *Salt v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012) (quoting Wright & Miller, Federal Practice and Procedure § 1165). However, a finding of excusable neglect should be formal with an evidentiary basis. *In re ASARCO, LLC*, 2008 WL 4533733 at *1 (Bankr. S.D. Tex. Oct. 3, 2008). Movants must prove excusable neglect by a preponderance of the evidence. *Id.* (citing *In re Montaldo Corp.*, 209 B.R. 40, 47 (Bankr. M.D.N.C. 1997)). "The mere assertion of excusable neglect unsupported by facts has been held to be insufficient." Wright & Miller, Federal Practice and Procedure § 1165; *see also Beaufort Concrete Co. v. Atl. States Constr. Co.*, 352 F.2d 460, 462 (5th Cir. 1965) (holding that a party who offered no excuse for a late filing could not prove excusable neglect). Factors relevant to a

finding of excusable neglect include the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395. The Court will examine these factors in turn.

a. *Length of the Delay and Prejudice to the Debtor*

The Confirmation Order required NSJS to amend its complaint by July 14, 2012. NSJS did not amend its complaint in state court until December 14, 2012, five months after the deadline. In a vacuum, a five-month delay in complying with a court order appears significant. However, the significance of a delay depends on the circumstances surrounding it. *In re Agway, Inc.*, 313 B.R. 22, 29 (Bankr. N.D.N.Y. 2003). There is no evidence that Debtor was prejudiced by the delay. The state court has granted NSJS's motion to dismiss WTSP II as a party to its suit. (ECF No. 126-5). Additionally, Debtor's confirmed plan contemplated that NSJS could pursue direct claims against non-debtor defendants. NSJS's Second Amended Petition contains just such claims. Because Debtor was not significantly prejudiced by the five-month delay, the Court finds that the delay had a minimal impact on the proceedings. This factor weighs in favor of NSJS.

b. *Good Faith*

WTSP II filed a motion for contempt against NSJS for its failure to amend. (ECF No. 106). The Court denied the motion for contempt in its order requiring NSJS to dismiss all claims. By denying the motion, the Court made an implicit finding of good faith. NSJS has also attempted to rectify its mistake by filing an amended petition and removing WTSP II as a party. This action appears to demonstrate good faith. Accordingly, this factor weighs in NSJS's favor.

c. *Reason for the Delay*

The third *Pioneer* factor, reason for the delay, is the most important factor for a court to consider. *See Rainey v. Davenport (In re Davenport)*, 342 B.R. 482, 497 (Bankr. S.D. Tex. 2006). Indeed, reason for the delay is the "key" to an analysis of excusable neglect. *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000). It is in this factor that NSJS has failed to demonstrate excusable neglect. NSJS relies on two primary pieces of evidence in its attempt to show the reason for its delay: the Confirmation Order (ECF No. 89) and the Western District Bankruptcy Court's Order Denying Reconsideration of Order to Remand (ECF No. 126-2).

As discussed above, the Confirmation Order contained two ambiguities. In *Pioneer*, the Supreme Court found that the bankruptcy court's inconspicuous placement of a bar date in a notice for the creditor's meeting left a "dramatic ambiguity" in the notification that would have confused even a person experienced in bankruptcy. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993). If the requirements of the Confirmation Order were dramatically ambiguous, then NSJS would have been justified in failing to meet those requirements. No such dramatic ambiguities exist, however.

Ambiguities in the written confirmation order can only justify the neglect if the ambiguities resulted in confusion. The record is clear that the ambiguities created no confusion. NSJS offers no evidence that it was confused by the ambiguities that it now identifies.

In the July 24, 2013 Memorandum Opinion, the Court addressed the effect of the Confirmation Order only requiring NSJS to dismiss its claims in the Western District adversary proceeding.[8] Because NSJS did not object to the language of the Confirmation Order and the adversary proceeding had already been remanded at the time the Confirmation Order was issued,

---

[8] Although the opinion treated the Confirmation Order as unambiguous, it still squarely addressed the issue of the Confirmation Order only discussing the adversary proceeding.

the Court held that NSJS should have known the Order referred to the remanded adversary proceeding. (ECF No. 155 at 10). Nor could the second ambiguity—that the Confirmation Order appeared to protect NSJS's ability to prosecute direct claims and then subsequently allows those claims to be dismissed—be described as dramatic. At an April 26, 2012 confirmation hearing, counsel for NSJS specifically acknowledged that the complaint needed to be amended to remove derivative claims. He also expressed concern that the right for NSJS to continue prosecuting its direct claims be protected in the Confirmation Order. Although the language of the Confirmation Order may superficially conflict, it should have been apparent that the Order protected NSJS's ownership of their direct claims only so long as they did not continue to assert claims which rightfully belong to the estate. NSJS should have understood the requirements of the Confirmation Order, or alternatively, requested clarification. Accordingly, the ambiguities in the Confirmation Order do not justify a claim of excusable neglect.

    The second document relied upon by NSJS is the Western District Bankruptcy Court's order determining that NSJS's claims were not derivative. That order stated "[the] proceeding does not appear to meet the definition of a derivative action," and further that the claims asserted by NSJS arose out of duties owed "to NSJS individually." NSJS contends that because the Western District order was issued during the 45-day period, it then believed its complaint contained no derivative claims that it could amend. NSJS has provided no evidence, however, to support its claim that it relied on the Western District order. While it is true that a separate court issued an opinion calling NSJS's claims direct (in dicta), NSJS has failed to demonstrate that any reliance on this opinion actually caused its delay.

    On its face, NSJS's contention that it relied upon the Western District order seems plausible. This Court issued a Confirmation Order on May 30, 2012 requiring NSJS to dismiss

its derivative claims. Only two weeks later, a separate court issued its own order stating that NSJS had no derivative claims. Confusion over this sequence of events seems possible. But, NSJS offers no evidence that the Western District order precipitated its neglect. Counsel for NSJS has argued that counsel relied on the Western District order, but statements of an attorney at a hearing do not constitute evidence. *See Guillen v. Holder*, 397 Fed. Appx. 30, 31 (5th Cir. 2010) (citing *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984)).

Under some circumstances, the absence of substantial evidence might not be fatal if the limited available evidence supported a finding of neglect. But, the limited record introduced by the parties could equally support a conclusion that counsel did not rely on the Western District opinion. Debtor's counsel sent a contempt letter to counsel for NSJS on November 7, 2012 asking NSJS to dismiss all derivative claims without specifying which claims should be dismissed. (ECF No. 106 at 43). NSJS responded by dramatically altering its complaint to remove WTSP II as a defendant as well as removing all alter ego claims and breach of fiduciary duty claims. (ECF No. 119-3). If NSJS truly believed that its complaint had no derivative claims, why would it respond to the contempt letter by deleting all claims that were arguably derivative? At the very least, the inference is that NSJS had no confidence in the opinion that might have caused its neglect.

The reasonableness of NSJS's reliance on the Western District order is further called into question by statements made by the Court at the confirmation hearing as well as the Confirmation Order itself. When describing the claims presented by NSJS, the Court stated "obviously some were derivative. . . . I don't think there's any question that some were." It is clear that this Court assumed before issuing the Confirmation Order that NSJS's complaint

contained derivative claims.  NSJS should have amended its complaint accordingly.  In addition, the Confirmation Order provides that:

> If NSJS timely files an Amended Complaint as provided herein, the Debtors shall have twenty (20) days from receipt of the Amended Complaint to file an objection *in this Court* challenging any of the claims or causes of action asserted in the Amended Complaint as claims and causes of action that may have been asserted by or on behalf of the Debtors or the Bankruptcy Estates. . . .

(ECF No. 89 at 11-12) (emphasis added).  The Confirmation Order contemplated that this Court, not the Western District Bankruptcy Court, would decide which claims belonged to the bankruptcy estate.  When this provision of the Confirmation Order is examined in conjunction with the Court's statements on the record, NSJS's reliance on the Western District order comes into serious doubt.  NSJS introduced not a scintilla of evidence to explain these discrepancies.  Moreover, NSJS introduced no evidence that it relied on the Western District opinion.  Is that an after-the-fact excuse, or a contemporaneous basis for neglect?  There is no evidence, and the burden of proof rests on NSJS.

NSJS bears the burden of proving, by a preponderance of the evidence, that its delay in complying with this Court's order was due to excusable neglect.  Although several factors of excusable neglect weigh in their favor, NSJS has failed to demonstrate sufficient evidence to support the most important factor: the reason for the delay.  Accordingly, the Court finds that NSJS must dismiss its claims pending in the McLennan County District Court.

NSJS argues in the alternative that, if the Court finds it has not proved excusable neglect, it be allowed to present additional evidence.  With regards to excusable neglect, the District Court remanded because "[i]t appears from the Memorandum Opinion that the Bankruptcy Court may not have considered fully NSJS's documentary evidence on this issue and, instead, relied primarily on the testimony offered by NSJS.  The Court remands this case to the Bankruptcy

Court . . . for further consideration of whether NSJS's failure to file a Second Amended Complaint under these circumstances constitutes good faith and/or excusable neglect." The Court has now fully considered NSJS's documentary evidence on the matter and complied with the District Court Order. The proper avenue for this Court to follow is to consider the evidence in the record at the time of the appeal.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **February 11, 2015.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE